UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MYRTA M. TAYLOR,
    Plaintiff,

v.

KOHL'S, INC.,
    Defendant.

No. 3:21-cv-1733 (SRU)

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Myrta Taylor brought this action against Kohl's, Inc. ("Kohl's") for injuries allegedly sustained in a slip-and-fall incident that occurred on December 22, 2019, at a Kohl's store. Kohl's removed the action to this Court. Kohl's now moves for summary judgment, which Taylor opposes. For the reasons set forth, I **deny** the defendant's motion for summary judgment.

**I.     Background**

   A.  Facts[1]

On December 22, 2019, Taylor and her husband Albert Pagliarulo visited the Kohl's store located at 500 Connecticut Avenue, Norwalk, Connecticut ("the Store"). Around 11:06 P.M., Taylor entered the Store; took a right into the Store's main aisle, comprised of white floor tiles; and walked directly to the Misses Department.

Effectively splitting the aisle in two were point-of-purchase displays. On the night of Taylor's visit, the Misses Department contained, in relevant part, two red towers exhibiting gift

---

[1] Unless otherwise noted, the facts are taken from the defendant's Local Rule 56(a)1 Statement (hereinafter, "Def.'s SOF") and exhibits, docs. no. 18-19; and Taylor's Local Rule 56(a)2 Statement (hereinafter, "Pl.'s SOF"), exhibits, docs. no. 24-1 through 24-11, and manually-filed surveillance video.

cards and gift bags.  To the left of the gift card and gift bag displays, Taylor fell.  She had been in the store for less than two minutes.

Taylor claims that she lost her footing when she stepped on an object on the floor.  Taylor did not see anything on the floor before she fell, does not know how long the alleged object was on the floor before she came into contact with it, and does not know what happened to the object after she slipped on it.  In the surveillance video Taylor submits as an exhibit ("the Video"), which extends from roughly one hour before Taylor's fall to roughly one hour after the fall, no debris on the floor is visible before or at the time of the fall, and there is no apparent cause for any debris to have been deposited on the floor before Taylor fell.  Of note, the footage becomes grainy when zoomed in.

After the fall, a customer retrieved Pagliarulo, who came to Taylor's aid.  Several Kohl's employees, including Diana Alarcón and Angie Gonzalez-Torres, also came to Taylor.  Alarcón and Gonzalez-Torres assert that they conducted a visual and physical inspection of Taylor's surroundings, which Taylor disputes.  Alarcón also took several photographs with her personal cell phone, including a photograph of the gift bag display tower near where Taylor fell ("the Photo").  Ex. G to Pl.'s Opp'n, Doc. 24-7.  In the Photo, several smaller gift bags hang on plastic hooks.  Id.  Additionally, a long, white, T-shaped object— a display hook— rests loose and unaffixed on top of gift bags.  Id.  The display hook does not appear to have belonged to the gift bag display.  Although Alarcón testified at her deposition that she does not know how the display hook got on the shelf, Taylor contends that Alarcón can be seen in the Video noticing an object on the floor and putting it on the shelf.  Compare Alarcón Dep., Doc. No. 24-3, 38:2-6, with Pl.'s SOF, Doc. No. 22, ¶ 14, and Ex. H to Pl.'s Opp'n, Doc. 24-8 (asserting that Alarcón appears to notice something on the floor at 11:08 P.M.).

The parties dispute the cause of Taylor's fall, Taylor's proximity to one or more of the displays at the time of the fall, the nature and frequency of the Kohl's employees' inspections of the fall area, and the stability of Taylor's shoes.

For their part, Taylor and Pagliarulo allege that Taylor fell on an object on the floor in the aisle. *See* Ex. B to Pl.'s Opp'n, Doc. No. 24-2 (initially reporting in a customer incident report, hereinafter "the Customer Incident Report," that Taylor slipped on a hanger)[2]; Taylor Dep., Ex. K to Pl.'s Mem., Doc. No. 24-11, 12:8-13:15 (testifying that she lost her footing upon contact with a roughly eight-inch long, T-shaped, silver piece of metal located near a shopping bag stand in the center of the aisle); Pagliarulo Dep., Ex. B to Def.'s Mem., Doc. No. 19, 12:5-12 (testifying that Taylor slipped on a T-shaped metal hook located on the floor next to a stand selling bags); Taylor Aff., Ex. J to Pl.'s Opp'n, Doc. No. 24-10, ¶¶ 2-4 (averring that she slipped on the white plastic display hook portrayed in the Photo).

For its part, Kohl's contests Taylor and Pagliarulo's accounts of the fall. Gonzalez-Torres wrote in an employee incident report, hereinafter "the Employee Incident Report," that "[Taylor] and her husband claimed there was a hanger on the floor but there wasn't one"; noted without further specification that "[t]here was a plastic hook near where the customer fell" ("the Plastic Hook"); and indicated that she had tagged and secured certain evidence, which Taylor infers was the display hook in the Photo but that Gonzalez-Torres has averred was merely the Video. *Compare* Emp. Incident Report, Ex. E to Pl.'s Opp'n., Doc. No. 24-5, at 8-9, *and* Def.'s Supp. Mem., Doc. No. 30, ¶ 6, *with* Customer Incident Report, Ex. B to Pl.'s Opp'n, Doc. No. 24-2, *and* Pl.'s Supp. Mem., Doc. No. 33, at 1. Gonzalez-Torres more recently denied finding

---

[2] The Customer Incident Report states that Taylor prepared the report, but the record indicates that Pagliarulo filled out the form. *See* Gonzalez-Torres Dep., Ex. E to Pl.'s Opp'n, Doc. No. 24-6, 25:4-18 (explaining that Gonzalez-Torres gave the report to Pagliarulo to complete because Taylor was on the floor and not able to do so herself).

3

any object, stating in an affidavit that she inspected the fall area and "found no hangers, debris, water or any other substance on the floor."  Gonzalez-Torres Aff., Ex. C to Def.'s Mem., Doc. No. 19, ¶ 6; *see also* Gonzalez-Torres Dep., Ex. F to Def.'s Mem., Doc. No. 24-6, 16:20 (testifying that she "didn't see anything on the floor").  Gonzalez-Torres and Alarcón also both testified at their depositions that Taylor fell several feet from a display.  Gonzalez-Torres Dep., Ex. F to Pl.'s Opp'n, Doc. No. 24-6, 16:22-17:8; Alarcón Dep., Ex. C to Pl.'s Opp'n, Doc. No. 24-3, 13:20-14:10.

Taylor was wearing zip-up ankle boots on the night of the fall.  Gonzalez-Torres wrote in the Employee Incident Report that Taylor's ankle boots were unzipped when the accident occurred, but Taylor testified that her ankle boots were zipped at the time of the fall.  *Compare* Employee Incident Report, Ex. E to Pl.'s Opp'n, Doc. No. 24-5, at 8-9, *with* Taylor Dep., Ex. K to Pl.'s Opp'n, Doc. No. 24-11, 11:4-9.

Gonzalez-Torres avers that Kohl's employees are "constantly walking in the area" and that the aisle in which Taylor fell is inspected at least three times per day.  Gonzalez-Torres Aff., Ex. C to Def.'s Mem., Doc. No. 19, ¶ 5.  In the Video, although customers frequently walk through the fall area, no person who appears to have been a Kohl's employee passes through the immediate fall area— the left portion of the aisle in the vicinity of the relevant point of purchase displays— from the start of the video at 10:00 P.M. to the time of the fall at 11:07 P.M.[3]

B. Procedural History

On December 14, 2021, Taylor filed a lawsuit against Kohl's in Connecticut Superior Court, Judicial District of Fairfield at Bridgeport.  *See Myrta Taylor v. Kohl's, Inc., d/b/a Kohl's Department Stores, Inc.*, Dkt. No. FBT-CV22-6111893-S (Dec. 14, 2021).  The suit asserted one

---

[3] I identify Kohl's employees in the security video from their lanyards, badges, and/or walkie-talkies.

count of negligence. Compl., Doc. No. 1-1. Kohl's removed the action pursuant to this Court's diversity jurisdiction on December 30, 2021 and answered the complaint on January 7, 2022. Notice of Removal, Doc. No. 1; Ans., Doc. No. 10. Kohl's asserted as an affirmative defense that any injuries or damages sustained by Taylor were the result of her own negligence. *Id.*

On January 20, 2023, Kohl's moved for summary judgment on the ground that there is no genuine dispute of material fact that it cannot be found liable to Taylor and thus that it is entitled to judgment as a matter of law. Def.'s Mot., Doc. No. 17. Kohl's argues that the record does not set forth any evidence that it created the defective condition of which Taylor complains, nor that the defective condition was in existence for a long enough period of time for Kohl's to have known about the condition and remedied it. *Id.* In support of its motion, Kohl's supplied a Local Rule 56(a)(1) Statement, a memorandum of law, and the following exhibits: (A) an excerpt of Taylor's deposition transcript; (B) an excerpt of Pagliarulo's deposition transcript; and (C) an affidavit of Gonzalez-Torres. *See* Docs. No. 18-19.

On April 10, 2023, Taylor opposed the motion for summary judgment. Pl.'s Opp'n, Doc. No. 24.[4] Taylor argues in opposition that disputed issues of fact preclude entry of summary judgment. *Id.* at 3. In support, Taylor supplied a Local Rule 56(a)(2) Statement, doc. no. 22; a memorandum of law, doc. no. 24; and the following exhibits: (A) the defendant's initial disclosure, doc. no. 24-1; (B) the Customer Incident Report, doc. no. 24-2; (C) Alarcón's deposition transcript, doc. no. 24-3; (D-E) a letter from plaintiff's counsel to defendant's counsel demanding a copy of Kohl's electronic incident record and a copy of the Employee Incident Report, docs. no. 24-4, 24-5; (F) Gonzalez-Torres's deposition transcript, doc. no. 24-6; (G) the Photo, doc. no. 24-7; (H) the Video and a screenshot from the Video, doc. no. 24-8; (I) the

---

[4] The plaintiff docketed several documents labeled as memoranda of opposition, which appear to be identical. I rely on document number 23.

plaintiff's litigation preservation notice, doc. no. 24-9; (K) an affidavit from Taylor, doc. no. 24-10; and (J) Taylor's deposition transcript, doc. no. 24-11.

On April 24, 2023, Kohl's replied, principally disputing contentions in Taylor's opposition memorandum and restating its argument that no factual evidence supports that it created the defective condition or had notice of it. Reply, Doc. No. 26.

Upon review of the parties' papers, I scheduled and held a telephonic discovery conference to address Taylor's allegation that Kohl's failed to preserve and produce certain evidence. Specifically, Taylor asserted in her memorandum of law in opposition to the defendant's motion for summary judgment and Local Rule 56(a)(2) statement that Kohl's did not timely disclose all relevant discovery and that at least some relevant evidence— specifically, the "tagged and secured" tangible evidence identified in the Employee Incident Report. *See* Pl.'s Opp'n, Doc. No. 24, at 3; Pl.'s SOF, Doc. No. 22, ¶ 16; Emp. Incident Report, Pl.'s Ex. E, Doc. No. 24-5, at 8-9. I inquired whether Kohl's was aware of and possessed the "tagged and secured" evidence, and I sought the parties' perspectives concerning what inferences, if any, I should draw from the alleged failure of production in connection with the defendant's motion for summary judgment. I ordered Kohl's to follow up with a supplemental discovery response, and I ordered both parties to submit supplemental briefing regarding the materiality, if any, of the allegedly unproduced evidence on the issues at summary judgment.

On June 1, 2023, Kohl's submitted a supplemental memorandum supported by an affidavit of Gonzalez-Torres ("the Supplemental Affidavit"). *See* Def.'s Supp. Mem., Doc. No. 30. In the Supplemental Affidavit, Gonzalez-Torres averred that the "tagged and secured" evidence identified in the Employee Incident Report was the Video, and counsel identified that

the Video had been timely produced. *Id.* Kohl's also restated the arguments set forth in its motion for summary judgment.

On June 13, 2023, Taylor submitted her supplemental memorandum. Pl.'s Supp. Mem., Doc. No. 33. She principally argued that the Court should not credit the Supplemental Affidavit because Gonzalez-Torres lacks credibility and the Court should discredit her testimony. *Id.* at 2. Taylor's supplemental memorandum also discussed the legal standards applicable to spoliation of evidence and argued, *inter alia*, that Kohl's had a duty to preserve the "hanger/sizer" and "plastic hook" mentioned in the Employee Incident Report. *Id.* I construe the memorandum, with its discussion of spoliation and request that I discredit the testimony of Gonzalez-Torres, as seeking the imposition of sanctions for failure to preserve evidence.

I turn to the defendant's motion for summary judgment.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists and summary judgment may enter when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court's inquiry is directed to determining "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

If a movant satisfies its burden at summary judgment by marshaling documentary and testimonial evidence, the nonmoving party may not rest upon mere allegations or denials of the pleadings but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). If a movant satisfies its burden by showing "an absence of evidence to support the nonmoving party's case," *id.* at 325, then "[t]he nonmoving party must set forth specific facts showing that there is a genuine issue for trial," *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008). If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

When evaluating a summary judgment motion, the Court must construe the facts of record in the light most favorable to the nonmoving party, resolve all ambiguities and draw all reasonable inferences against the moving party, and disregard all evidence favorable to the moving party that the jury is not required to believe. *Anderson*, 477 U.S. at 255; *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150-51 (2000). The Court may not weigh the evidence or determine the truth of the matter. *Anderson*, 477 U.S. at 250.

**III.    Discussion**

Taylor asserts that Kohl's is liable in negligence for damages arising from her slipping and falling in the Store on December 29, 2019. Kohl's argues that summary judgment should enter in its favor because Taylor has not come forward with any evidence upon which a reasonable jury could find that there was a defect in the Store that caused her to slip and fall, or that it had actual or constructive notice of such a defect. I disagree.

The parties do not dispute that the Complaint sets forth a claim of negligence based on premises liability and that Taylor was a business invitee of Kohl's. Under Connecticut law, a business owner owes its invitees a duty to keep its premises in a reasonably safe condition. *Baptiste v. Better Val–U Supermarket, Inc.*, 262 Conn. 135, 140 (2002). To establish the defendant's liability for her personal injuries, Taylor must prove: "(1) the existence of a defect, (2) that the defendant knew or in the exercise of reasonable care should have known about the defect and (3) that such defect had existed for such a length of time that the defendant should, in the exercise of reasonable care, have discovered it in time to remedy it." *Bisson v. Wal-Mart Stores, Inc.*, 184 Conn. App. 619, 627-28 (2018) (alteration omitted).

A. <u>The existence of a defective condition is a genuine issue of material fact.</u>

In its motion for summary judgment, Kohl's appears to assume *arguendo* that a defective condition existed. *See* Def.'s Mem. of Law, Doc. No. 19, at 5. I conclude that the existence of a defect— whether there was an object on the floor that caused Taylor to fall and the nature of such object— is a genuine issue of material fact.

Taylor and Pagliarulo have consistently asserted that Taylor slipped and fell on an object on the floor, and they appear to have concluded that Taylor slipped on a T-shaped hook-like object located near the gift bag display. Customer Incident Report, Ex. B to Pl.'s Opp'n, Doc. No. 24-2, at 2; Emp. Incident Report, Ex. E to Pl.'s Opp'n, Doc. No. 24-5, at 8-9; Compl., Doc. No. 1-1, ¶ 3; Taylor Dep., Ex. K to Pl.'s Opp'n, Doc. No. 24-11, 12:8-13:13, 15:16; Pagliarulo Dep., Ex. B. to Def.'s Mem., Doc. No. 19, 12:5-12, 13:7-15. Gonzalez-Torres similarly noted in the Employee Incident Report that there had been a plastic hook "near where [Taylor] fell." Emp. Incident Report, Ex. E to Pl.'s Opp'n, Doc. No. 24-5, at 8-9. The Photo displays an object consistent with the descriptions of Taylor, Pagliarulo, and Gonzalez-Torres: a long, thin, T-

shaped hook. Ex. G to Pl.'s Opp'n, Doc. No. 24-7. Alarcón appears to have picked up an object in the Video, and a reasonably jury could infer that the object she picked up was the display hook that appears in the Photo. Drawing all reasonable inferences in Taylor's favor, a trier of fact could find that a defect— the display hook— existed at the time of Taylor's fall.

Moreover, the testimonies of Taylor and Pagliarulo conflict with the testimonies of Alarcón and Gonzalez-Torres, and the testimony of certain individuals was inconsistent over time. For example, Taylor's account of the cause of her fall evolved from a hanger to a display hook, and Gonzalez-Torres wrote in the Employee Incident Report that the hook existed but subsequently denied its existence in her deposition and Supplemental Affidavit. It is not for the Court "to weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002); *see also Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). The conflicting testimony further counsels against summary resolution. If the jury finds Taylor credible and credits her testimony, that is sufficient evidence from which a reasonable jury may find that the defective condition existed and caused her fall.

Based on the present record, I conclude that Taylor has identified the specific defective condition that caused her fall— the display hook— and that there is a genuine issue of material fact regarding the existence of the defective condition on the defendant's premises.

B. The defendant's constructive notice of the defective condition is a genuine issue of material fact.

The next issue is the defendant's notice of the condition. Taylor appears to concede that Kohl's did not have actual notice of the alleged defective condition. *See* Pl.'s Opp'n, Doc. No.

10

24, at 2. As a result, the question is whether there is a genuine issue of material fact concerning the defendant's constructive notice of the defect.

"[B]usiness owners do not breach their duty to invitees by failing to remedy a danger unless they have had actual or constructive notice of that danger." *DiPietro v. Farmington Sports Arena, LLC*, 306 Conn. 107, 117 (2012). "[R]elevant case law in Connecticut places a heavy burden on a 'slip and fall' plaintiff to demonstrate that a defendant had . . . notice of the specific defect that led to the accident. . . ." *Knox v. United States*, 2016 WL 4724558, at *4 (D. Conn. Sept. 9, 2016) (cleaned up). A defendant may be liable based on a theory of constructive notice when the specific defective condition "existed for such a length of time that [the defendant's] employees should, in the exercise of due care, have discovered it in time to have remedied it." *Kelly v. Stop and Shop, Inc.*, 281 Conn. 768, 777 (2007) (quoting *Morris v. King Cole Stores, Inc.*, 132 Conn. 489, 493 (1946)). "Whether or not the defect had existed for a length of time sufficient to constitute constructive notice is a question of fact for the jury and unless the period of time is such that but one conclusion could be found, its determination should be left to the trier." *Baker v. Ives*, 162 Conn. 295, 307 (1972).

To defeat a defendant's motion for summary judgment in a case alleging defective conditions, a plaintiff bears the burden of "offering evidence from which a jury reasonably could conclude that the defendant had notice of the condition and failed to take reasonable steps to remedy the condition after such notice." *DiPietro*, 306 Conn. at 117. If the plaintiff fails to make such a showing, then summary judgment is appropriate because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. On that basis, this Court and other Connecticut courts have routinely granted summary judgment against plaintiffs who failed to present any

evidence regarding the duration of a defective condition.  *See*, *e.g.*, *Camera v. Target Corp.*, 2020 WL 3051751, at *7 (D. Conn. June 8, 2020) (granting summary judgment to the defendant where the plaintiff failed to present evidence of constructive notice because "the evidence 'goes no farther than to show the presence of a slippery foreign substance'") (quoting *Kelly*, 281 Conn. at 777).  In its memorandum of law, Kohl's analogizes this case to that line of cases.  *See* Def.'s Mem., Doc. No. 19, at 5 (citing, *e.g.*, *Moss v. New Haven Crown CVS, Inc.*, 2001 WL 950778 (Conn. Super. Ct. July 18, 2001); *Mercado v. Wal-Mart Stores, Inc.*, 2000 WL 350306 (Conn. Super. Ct. Mar. 20, 2000)).  Notwithstanding the fact that Taylor admits that she does not know how long the object had been on the floor, this is not one of those cases.  The summary judgment record contains evidence from which a reasonable jury could determine that the defective condition had existed for at least an hour prior to Taylor's fall.

As noted above, a jury could find that Taylor fell on the display hook as alleged; thus, it could find that the hook was on the floor when and where she fell.  The record contains roughly an hour of surveillance footage of the fall area prior to Taylor's fall, from which a reasonable jury could find that the Video does not show any event that could have caused the display hook to fall on the floor.  The jury could infer from these apparent facts that the hook fell on the floor before the Video began and remained on the floor for approximately an hour.  *See also Anderson*, 477 U.S. at 255 (providing that "the drawing of legitimate inferences from the facts are jury functions, not those of a judge").  Assuming *arguendo* that the defective condition had been in place for an hour, the reasonableness of the defendant's response presents a genuine issue of material fact that should be decided by a factfinder at trial.  *See Barbaro v. Lucky Brand Dungarees Stores, LLC*, 2019 WL 3248553, at *4, *9 (Conn. Super. Ct. June 18, 2019) (concluding that a genuine issue of material fact existed concerning the reasonableness of the

defendant's conduct where an hour passed between the defendant's inspection of the premises and the plaintiff's alleged fall).

Therefore, drawing all inferences in the light most favorable to the plaintiff, I conclude that a reasonable jury could find that Taylor's injuries were caused by a defective condition of which Kohl's had constructive notice. This record contains circumstantial evidence with a "definite basis in the facts" that is "not . . . the result of speculation and conjecture" from which a reasonable jury has a "basis to determine whether the length of time was sufficient to permit a reasonable inference of constructive notice." *Gulycz v. Stop and Shop Cos.*, Inc., 29 Conn. App. 519, 522 (1992). The issue is certainly not so one-sided that it could only be resolved in the defendant's favor as a matter of law. *See Anderson*, 447 U.S. at 251-52.

Furthermore, Taylor and Kohl's offer conflicting affidavits and deposition testimony concerning the existence of a defective condition and the cause of Taylor's fall. Due to the graininess of the surveillance video and the difficulty of seeing the alleged white display hook on the white floor tile, this case will likely turn on the conflicting testimony of the witnesses. It is well-established that the credibility of witnesses is to be resolved by a jury based on their in-court testimony and not by the Court based on the witnesses' affidavits and depositions. *See Colby v. Klune*, 178 F.2d 872, 873 (2d Cir. 1950) ("[O]nly in [a trial on oral testimony] can the trier of the facts . . . observe the witnesses' demeanor; and that demeanor . . . is recognized as an important clue to witness' credibility. When . . . the ascertainment . . . of the facts of a case turns on credibility, a triable issue of fact exists, and the granting of a summary judgment is error.").

Based on the present record, I conclude that Taylor has identified genuine issues of material fact regarding whether Kohl's had constructive notice of the alleged defective condition

13

and whether it failed to respond in a reasonable fashion.  Because there are genuine disputes as to material issues of fact, summary judgment is inappropriate and may not enter.

### IV.    Conclusion

For the foregoing reasons, Kohl's motion for summary judgment (doc. no. 17) is **denied**.

This case will be scheduled for trial in the spring of 2024.  Within **fourteen days** of this order, the parties shall file a joint status report indicating whether they request a referral to a United States Magistrate Judge for settlement purposes and/or whether they consent to a trial before a (different) magistrate judge.

So ordered.

Dated at Bridgeport, Connecticut, this 16th day of August 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge